FILED BY _____ D.C.

05 OCT 26  AM 9: 18

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |  |
|---|---|---|---|
| HELEN M. STARNES, | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| vs. | ) | No. | 01-2804 B/A |
| | ) | | |
| SEARS, ROEBUCK & CO., et al., | ) | | |
| | ) | | |
| **Defendants.** | ) | | |
| | ) | | |

---

## ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE
## TESTIMONY OF PLAINTIFF'S EXPERT

---

Before the Court is Defendants Sears, Roebuck & Company and Jones Lang LaSalle

Americas, Inc.'s Motion to Preclude and Exclude Testimony of Plaintiff's Expert pursuant to

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993). United States District Judge J. Daniel Breen referred this Motion to the United States

Magistrate Judge for determination. For the following reasons, the Motion is **GRANTED**.

### BACKGROUND

This action arises out of an assault suffered by Plaintiff on September 9, 2000, at the

hands of an unknown assailant in the parking lot of Southland Mall in Memphis, Tennessee.

Plaintiff has sued the Defendants, alleging that they were responsible for providing safety and

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on **10·26·05**

1

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____
158

security at Southland Mall and that the security precautions taken were not reasonable under the circumstances. Plaintiff contends that the Defendants breached the duty of care owed by them to her and this breach was a proximate cause of her injuries.

Pursuant to Federal Rule of Evidence 702, Plaintiff identified Mr. William E. Hudson ("Hudson") as an expert witness and indicated that he would testify regarding the adequacy of security measures at Southland Mall on the date the assault against Plaintiff occurred. His deposition was taken on June 30, 2004. On August 19, 2005, Sears, Roebuck & Co.,and Jones Lang LaSalle Americas, Inc., two of the Defendants in the present action, filed this Motion to exclude Hudson as an expert and to preclude any testimony he might offer under FRCP 702.

## ANALYSIS

Defendants contend that Hudson's testimony lacks a reliable foundation and is not relevant to the issues before the Court, and therefore Hudson should not be allowed to testify on behalf of Plaintiff. Plaintiff counters this argument by highlighting Hudson's long term employment with the United States Secret Service, his subsequent decade-long experience as a private security consultant, his knowledge of security techniques, and his experience in evaluating premises in order to determine their level of safety, all of which, she maintains, make him an appropriate expert witness.

### Rule 702 and Daubert

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by

knowledge, skill, experience, training, or education, may testify thereto in the form of an

opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the

testimony is the product of reliable principles and methods, and (3) the witness has

applied the principles and methods reliably to the facts of the case.

Fed. R. Civ. P. 702. Thus, the rule "clearly contemplates some degree of regulation of the

subjects and theories about which an expert may testify. *Daubert*, 509 U.S. at 589. In *Daubert*,

the Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on the trial court to

ensure expert testimony "is not only relevant, but reliable." *Id.* A trial court is required to

inquire as to whether the methodology underlying the proffered expert testimony is valid and

whether the methodology may be properly applied to the facts at issue in a particular case. *Id.* at

592-593. This gatekeeping function applies to testimony regarding technical or other specialized

knowledge, and not just to scientific testimony. *Kumho Tire v. Carmichael*, 526 U.S. 137, 141

(1999) (The obligations imposed on a trial judge by *Daubert* extends to all expert testimony. ).

    *Daubert* and *Kumho* require a two-step inquiry that analyzes the "relevance and the

reliability" of an expert's opinion. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999).

During the relevance step, the court is to ensure that "there is a 'fit' between the testimony and

the issue to be resolved by the trial." *Id.* (citing *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.

1993). During the reliability step, the court focuses on the "methodology and principles" that

form the basis for the expert's testimony. *Id.* The court is to examine the reliability of the

methodology and principles underlying the testimony, not on the reliability of the conclusions

reached by the expert because "if the principles, methodology and reasoning are scientifically

valid then it follows that the inferences, assertions, and conclusions derived therefrom are scientifically valid as well." *Id.* at 497 (quoting *Bonds*, 12 F.3d at 556).

To determine reliability, *Daubert* sets forth four factors the court may consider. First, has the expert's technique or theory been tested or can it be tested? Second, has the technique or theory been subjected to peer review? Third, what is the known or potential rate of error of the technique when applied? Fourth, is the technique or theory generally accepted in the scientific community? The inquiry under these factors is flexible and they are not a definitive test or checklist but are merely instructive. *Kumho*, 526 U.S. at 150; *Daubert*, 509 U.S. 593-594.

### Specialized Knowledge

Hudson graduated from the University of Tennessee in 1962 with a degree in political science. From 1964 to 1979, he served as a criminal investigator with the United States Secret Service ("USSS") in seven field offices including New York, Los Angeles and Washington D.C. and from 1979 until 1994, he was the Special Agent in charge of the Memphis office of the USSS. According to Plaintiff, Hudson has had extensive experience in managing security programs and has coordinated protective and investigative activities in West Tennessee.[1] During his deposition, portions of which are attached as Exhibit B to Plaintiff's Response, Hudson stated that he did a number of security evaluations of malls while he was employed by the USSS. He

---

[1]To substantiate this and other claims, Plaintiff's Response makes reference to Hudson's expert report and states that a copy of the report is attached as Exhibit A. Neither the Response contained in the Clerk of the Court's file nor the copy provided to the Court, however, have an Exhibit A. They have a tab that says Exhibit A, but there is nothing behind it. Furthermore, the docket sheet does not indicate that a copy of Plaintiff's expert report was filed separately with the Court. Therefore, the Court 's decision is based upon statements contained in Plaintiff's Response and Exhibits B, C, and D attached thereto in evaluating whether Hudson is qualified to render an opinion on the issue of shopping mall security.

4

was only able to identify one mall, however, located in Jackson Tennessee, where he could recall providing security for a Presidential or Vice Presidential visit.[2]  He was assigned to the Presidential Protective Division at the White House for 8 years, and "gained extensive experience in managing domestic and foreign security programs."  Pl.'s Resp. Ex. B, p. 4.[3]  He has been president of Searchlight, Inc., a security consulting and investigative firm, since 1994, and is a member of the American Society of Industrial Security, Tennessee Association of Investigators, and the Association of Former Agents of the USSS.  Hudson states that he has not testified as an expert since 1997, and has not "authorized any publication" in the last ten years. He does not state, however, whether he was certified as an expert by a court or whether he only offered testimony as an expert duing a deposition.  As such, the Court has no way of determining whether he has ever been certified as an expert by a court, and if so, the area of his expert opinion.

## Relevance

Hudson only provides limited information as to his actual duties and responsibilities with the USSS.  He fails to describe what the mission of the USSS is exactly and it appears that his experience dealt primarily with providing security for high ranking government officials, including Presidents Johnson and Nixon and former first lady Jacquline Kennedy.  He was also

---

[2]Only a small portion of the transcript of Hudson's deposition was attached to Plaintiff's Response, and therefore the Court's ability to review everything Hudson testified to regarding his qualifications is limited.  Similarly, while the Defendants do purport to set forth some actual quotes from Hudson's deposition in its Motion to Exclude and supporting Memorandum, they did not attach a copy of the portions of the transcript it references and did not file the entire transcript with the court.

[3]The Court notes that page 3 of Exhibit B of the Plaintiff's Response, captioned "Qualifications and Experience," is blank.

5

responsible for coordinating security as the director of the USSS Memphis office when high ranking elected officials visited the area. Thus, his experience is in the area of providing and evaluating personal security needs under tightly controlled situations. This, it seems to the Court, is different from analyzing and providing security on a day to day basis at a shopping mall. While Hudson might certainly be qualified to render opinions on security for individuals or executives who fear for their own safety because of the position they hold, that does not necessarily mean he is qualified to assess the level of security needed for the general public at a shopping mall.

## Reliability

Hudson purports to testify that there were no monitored closed circuit security cameras in place in the parking lot where the incident occurred, and that in his opinion, the lack of cameras made the parking lot "extremely vulnerable to criminal activity" when considered in conjunction with the incident history at the mall as well as the criminal profile of the area. He was unable, however, to cite to any tests or methodology he employed to reach this conclusion and could not point to any statistical data or empirical studies that would support this position. In fact, Hudson stated that his opinion that closed circuit security cameras may have prevented Plaintiff's assault was based upon his "general experience" and nothing else. Hudson Depo. p. 80.

Secondly, Hudson will also testify that there was a breakdown in operational procedure because there was only one security vehicular patrol at the time of the incident. This breakdown created "vulnerability gaps" in assigned coverage of at least fifty (50) percent and there should have been a security procedure in place which allowed for a response unit in the event of any

6

incident in the parking lot so as to preclude any gaps in parking lot coverage.  In Hudson's

opinion, "the high threat profile, the lack of security cameras monitoring parking lots, and the

reduced number of vehicle security patrols created an unsafe environment for customers at and

around the Southland Mall on September 9, 2000," and "mall management and security knew or

had reason to know that criminal acts against their customers were reasonably foreseeable."  Pl's

Resp. Ex. B, p. 12.

       In forming his opinion that the Southland Mall was a high risk area and that criminal

activity was reasonably foreseeable to mall management and mall security, Hudson relies upon

what he terms a "Threat Profile" wherein he analyzes crime statistics for the Memphis Police

Department's South Precinct, Patrol Ward 232 where Southland Mall is located, and the number

of crimes reported at Southland Mall from January 1997 through August 2000.  On page 8 of

Exhibit B of Plaintiff's Response is a chart wherein Hudson lists the number of crimes that

occurred in the South Precinct for that time period as well as the number of crimes that occurred

in Ward 232.  Hudson concludes that based on these numbers, "one third of all major crimes

occurring during this time frame in the South Precinct took place in Ward 232."  Pl.'s Resp. Ex.

B, p. 8.  A cursory review of Hudson's calculations, however, indicates that he is not comparing

apples to apples in arriving at his conclusion.  Included within the statistics for Ward 232 are

categories for Simple Assault, Residential Burglary and Rape, none of which are included as

categories for the South Precinct.  If the number of crimes for Simple Assault, Residential

Burglary and Rape are deducted from the total for Ward 232, the number of crimes would be

7,278 rather than 11,622 as stated by Hudson.  This means that less than 25% of the crimes

occurring during this time frame took place in Ward 232, and not the one-third as Hudson states.

On page 9 of Exhibit B of Plaintiff's Response, Hudson states that a comparison of the five (5) precincts in Memphis reveals that the South Precinct had a particular ranking in certain categories for the time period. Hudson does not, however, attach or refer to any supporting information or statistics to support his conclusion. Similarly, on page 10 of Exhibit B, he states that the "crime risk" at Southland Mall is five (5) times the national average, six (6) times the state average, and two point six (2.6) times the county average. Pl.'s Resp. Ex. B, p. 10. As such, he concludes that the threat of crimes against both property and persons in and around Southland Mall is at a high risk. Again, Hudson does not offer any supporting documentation to support his conclusions, nor does he even identify the source of these statistics. While it is possible Hudson's conclusion that the Southland Mall area is a high risk area is correct, he fails to provide the Court with any information from which the reliability of his conclusion can be ascertained.

Hudson's opinions as to security needs at Southland Mall appear to be based upon his "general experience" and "common sense." Hudson Depo. p. 30, 80. He cannot identify any publications, studies or other empirical data to support his opinion that security cameras and additional patrols reduce the incidents of crime in mall parking lots. It seems to make common sense that such extra security measures would, but Hudson wants to testify as an expert and he should be able to identify some data to support his conclusions. Additionally, an opinion that is based entirely upon Hudson's general experience and common sense is incapable of testing and thus the known or potential rate of error cannot be determined.

8

**Defendant's Expert**

The Plaintiff makes alot out of the fact that the Defendant's expert, Steven Rutledge ("Rutledge"), is of the opinion that Hudson is competent to testify as an expert in this matter. Rutledge's opinion, however, is not persuasive when considered in light of everything else. In addition, as previously stated, it may be that Hudson would qualify as an expert in some areas, but in the Court's opinion, he is not qualified in the area at issue in the case.

In her Response, the Plaintiff also states that if the court decides that Hudson's testimony should be excluded, then it should exclude Rutledge's testimony as well. This issue is not properly before the Court. The Plaintiff did not file a Motion to Exclude Rutledge's testimony, and the parties did not brief the issue. Therefore, the Court will not make a determination in connection with Defendant's pending motion whether or not Rutledges's testimony should also be excluded.

## CONCLUSION

In the Court's opinion, the burden is on the party who desires to offer the witness as an expert to demonstrate that the testimony is both relevant and reliable, and the Plaintiff has failed to do so in this instance. Hudson's specialized knowledge concerning adequate security measures for high ranking public officials does not seem relevant to the day to day security concerns at a shopping mall. In addition, Hudson is unable to describe any tests or methodology he employed in forming his opinions, nor can he cite to any materials that verify or support his opinions.

**IT IS THEREFORE ORDERED** Defendants' Motion to Preclude and Exclude

Testimony of Plaintiff's Expert, Mr. William E. Hudson, be **GRANTED**.  ANY OBJECTIONS

TO THE MAGISTRATE JUDGE'S ORDER SHALL BE MADE WITHIN TEN (10) DAYS

AFTER SERVICE OF THE ORDER, SETTING FORTH PARTICULARLY THOSE

PORTIONS OF THE ORDER OBJECTED TO AND THE REASON FOR THE OBJECTION.

**IT IS SO ORDERED.**

S. THOMAS ANDERSON
UNITED STATES MAGISTRATE JUDGE

October 25, 2005
DATE

10

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 158 in
case 2:01-CV-02804 was distributed by fax, mail, or direct printing on
October 26, 2005 to the parties listed.

---

Warren D. McWhirter
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

Robert A. Cox
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Steven M. Markowitz
LAW OFFICE OF STEVEN M. MARKOWITZ
45 S. Idlewild
Ste. 509
Memphis, TN 38104

David Wade
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Dale H. Tuttle
GLASSMAN JETER EDWARD & WADE
26 N. Second Street
Memphis, TN 38103

Mark W. Raines
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

Lauri Hays Prather
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Honorable J. Breen
US DISTRICT COURT