IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

HELEN M. STARNES,

    Plaintiff,

v.                               No. 01-2804 B An

SEARS ROEBUCK & CO., et al.,

    Defendants.

---

ORDER ON OBJECTIONS AND AFFIRMING IN PART MAGISTRATE JUDGE'S
ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE
TESTIMONY OF PLAINTIFF'S EXPERT

---

On October 26, 2005, Magistrate Judge S. Thomas Anderson entered a order granting the motion of the Defendants, Sears Roebuck & Co. ("Sears") and Jones Lang LaSalle Americas, Inc. ("Jones Lang") to exclude the testimony of the Plaintiff's expert, William E. Hudson, pursuant to Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). This case arises from an assault on the Plaintiff, Helen M. Starnes, in the parking lot of Southland Mall in Memphis, Tennessee. She has alleged that the Defendants were responsible for providing security for the shopping area and that the precautions taken by the Defendants were not reasonable. According to the Plaintiff, Hudson was to offer testimony at trial concerning the adequacy of the security measures taken at the shopping mall on the date the incident occurred.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, upon the filing of objections, the district court judge is to "consider such objections and . . . modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 12-14-05



the entire evidence is left with the definite and firm conviction that a mistake has been committed." U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed 746 (1948).

>Rule 702 of the Federal Rules of Evidence provides in pertinent part that
>
>>[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . .

Fed. R. Evid. 702. In Daubert, the Supreme Court held that, prior to admitting expert testimony, the district court must satisfy itself that the testimony "rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597, 113 S.Ct. at 2799. Daubert's application extends "not just to scientific evidence but to all expert testimony, including testimony based on technical and other specialized knowledge." Nemir v. Mitsubishi Motors Corp., 381 F.3d 540, 554-555 (6th Cir. 2004), reh'g en banc denied (Oct. 28, 2004) (citation omitted).

The Supreme Court in Daubert "listed several factors which the lower courts should consider in determining the reliability of scientific evidence, including: whether the theory can be reliably tested; whether it has been subject to peer review; what the theory or test's potential rate of error of is; whether there are standards controlling the test's operations; whether the theory or test is generally accepted; and whether the expert conducted the work independent of litigation." Thomas v. City of Chattanooga, 398 F.3d 426, 431 n.1 (6th Cir. 2005), cert. denied, ___ U.S. ___, 126 S.Ct. 338, 73 U.S.L.W. 3673 (U.S. Oct. 3, 2005) (No. 04-1478) (citing Daubert, 509 U.S. at 590-97). As the Advisory Committee observed,

>[s]ome types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant

> to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so . . .
>
> Nothing in [the Rule] is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education-- may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. . . .
>
> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

Fed. R. Evid. 702, advisory committee's note (2000 amendment).

According to his resume, Hudson has 30 years experience with the United States Secret Service, including assignment to the presidential protective division at the White House for eight years, during which he gained experience in managing domestic and foreign security programs, and as special agent in charge of the Memphis, Tennessee Secret Service field office for 15 years. From 1994 to the present, he acted as president of Searchlight, Inc., a security consulting and investigative firm. During that period, he also served as a special investigator for the Secret Service. Hudson describes the services provided by Searchlight, which he established, as executive protection program design, security survey of facilities and operations, technical security audio countermeasures and investigations. He has not testified as an expert prior to this case and has not authored any published works. The proposed expert holds a bachelor of science degree in political science from the University of Tennessee and memberships in the American Society for Industrial Security and

3

the Tennessee Association of Investigators. In preparation for this case, Hudson visited the site of the incident and reviewed mall incident reports, depositions, daily activity safety report of the incident date, the security company's employee handbook, Memphis Police Department incident and crime analysis reports.

The magistrate judge granted the motion to exclude, concluding that Hudson's experience as a retired Secret Service agent involved primarily in providing security for high ranking public officials did not qualify him to assess the level of security appropriate for a public shopping mall. The magistrate judge also found that his opinions, based on "general experience" and "common sense" rather than tests, methodologies, statistical data or empirical studies, were not reliable. Upon review, the Court agrees that exclusion of Hudson's testimony is appropriate, but for reasons different from those articulated by the magistrate judge.

With respect to the magistrate judge's finding that Hudson was not qualified to testify as an expert, it is the opinion of the undersigned that the decision reflected an overly narrow view of the expert's qualifications. Specifically, the information provided to the Court suggests a broader range of experience than mere executive protection. Recognizing that "Rule 702 has a liberal thrust commanding a general approach of relaxing the traditional barriers to opinion testimony," it is the conclusion of the Court that the proffered expert is in fact qualified to opine as to the sufficiency of security at a shopping mall. Busch v. Dyno Nobel, Inc., 40 F.App'x 947, 960 (6th Cir. 2002) (citing Daubert, 509 U.S. at 588, 113 S.Ct. 2786). In doing so, the Court finds instructive the decision in Bethea v. Bristol Lodge Corp., No. Civ.A. 01-612, 2003 WL 21146146 (E.D. Pa. May 19, 2003), a wrongful death action arising out of a robbery that occurred in the parking lot of a topless club. Bethea, 2003 WL 21146146 at *1. The defendant offered an expert witness who had been trained

4

at the Federal Bureau of Investigation academy, had been employed as a police officer and a municipal director of public safety, and who ran a security firm which conducted business, legal and corporate investigations. Id. at *4. In denying the plaintiffs' motion to exclude on the grounds of lack of qualification, the court determined that

> [u]nder the applicable standard, the specialized knowledge of the expert may be derived from practical experience. In light of the practical experience and background in providing corporate security services, [the expert] has satisfied the Court that he possesses specialized knowledge beyond the average layman in the area of security for commercial properties . . . I therefore concluded that [the expert] is preliminarily and generally qualified to testify at trial as an expert witness on the subject of what security measures would make the activities of patrons at bars, restaurants, nightclubs and casinos safe during their intended visit.

Id. at *5. Here too, Hudson possesses specialized knowledge concerning security beyond that of the average person. The test for expertise is not "overly rigorous" and "[t]he trial court should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." Lovato v. Burlington N. and Santa Fe Ry. Co., No. CIV.A. 00-RB-2584CBS, 2002 WL 1424599, at *3 (D. Colo. June 24, 2002) (citing Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 782 (3d Cir. 1996)). Any weaknesses in Hudson's expertise or specialization in the area of shopping mall security may be addressed in cross-examination. See First Tenn. Bank Nat'l Ass'n v. Barreto, 268 F.3d 319, 333 (6th Cir. 2001) ("to the extent that [the proffered expert] may have lacked familiarity with some aspects of [the subject matter at issue], the district court correctly reasoned that such unfamiliarity merely affected the weight and credibility of his testimony, not its admissibility").

Even though the Court finds Hudson qualified to testify as an expert, it also determines that his opinion is not reliable or relevant. The expert opined as follows:

5

> There was no monitored closed circuit security camera (CCTV) coverage of the Sears parking lot where this incident took place. . . . Due to the incident history at the mall as well as the criminal profile of the area, it is my opinion that the lack of monitored security cameras made the parking area extremely vulnerable to criminal activity.
>
> \* \* \*
>
> Only one (1) of the security vehicular patrol units responsible for parking lot security was operational at the time of the incident. Normally, two (2) security vehicles are utilized for perimeter parking lot coverage on a daily basis from 11:00 a.m. - 10:00 p.m. . . . The fact that only one security vehicle was on patrol during the incident time frame appears to be a breakdown of operational procedure. Since the roving security vehicles are the only apparent deterrent to criminal activity in the parking areas, this security measure was effectively reduced fifty (50) percent thereby creating vulnerability gaps in assigned coverage.
>
> In my opinion, a minimum of two security vehicles should have been operational at all times. Additionally, there should have been a security procedure in place which allowed for a response unit in the event of any incident in the parking lot; the purpose of this response unit would have been to preclude any gaps in parking lot coverage.

(Pl.'s Objection to the Order of Magistrate Judge S. Thomas Anderson Granting Def.'s Mot. to Exclude Test. of Pl.'s Expert and Appeal to U. S. Dist. Judge J. Daniel Breen, Ex. A.)

Although the magistrate judge notes in his opinion that Hudson's interpretations of crime statistics is inaccurate, the primary focus of the Court's analysis under Rule 702 is on principles and methodology rather than the correctness of the conclusions generated. See Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999). As the magistrate judge correctly articulates, however, the proffered expert offers no basis, other than his experience, for his opinions. Again, Bethea offers some guidance in this case.

The expert therein opined, based on witness reports, police investigation reports, and photographs and diagrams of the bar's parking area, that the standard of lighting at the entrance to the establishment was consistent with what is reasonable and adequate for a business entrance and

6

parking lot, and that the purpose of unarmed security personnel was not to act as police officers nor were they expected to confront dangerous persons. Bethea, 2003 WL 21146146 at *6-7. Both opinions were given without support. Id. Finding the opinion inadmissible, the court held that, even though the non-scientific nature of the evidence rendered inappropriate the rigorous testing of methodology or the need for peer review, "the expert must still provide a methodology that can be proven to be reliable." Id. at *7. The court further stated that "[i]n light of [the expert's] responses and statements, his analysis appears to be no more than his instinctive reaction to the materials provided. He cites to no industry standard for his opinions on the requisite necessities for adequate security, nor does he provide any explanation . . . as to how he has reached these opinions." Id.

Likewise, the opinions offered by Hudson are completely unsupported. The Court's gatekeeping function under Daubert requires more than simply "taking the expert's word for it." Fed. R. Evid. 702 advisory committee's note (2000 amendment); see also McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1244 (11th Cir. 2005), reh'g and reh'g en banc denied (July 15, 2005). In addition, the Court finds that his "expert opinion" will not assist the trier of fact. See Ancho v. Pentek Corp., 157 F.3d 512, 517 (7th Cir. 1998) (an expert "must testify to something more than what is obvious to the layperson"); Lovato, 2002 WL 1424599 at *12 (expert's opinion that railroad company could reduce the probability of worker injury by adding more employees of no assistance, as jurors could figure that out on their own).

Accordingly, as the Court, for the reasons set forth herein, cannot find the magistrate judge's conclusion that the Plaintiff's expert's opinion does not comport with the requirements of Rule 702 clearly erroneous or contrary to law, his exclusion thereof is AFFIRMED.

IT IS SO ORDERED this 13R day of December, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 178 in case 2:01-CV-02804 was distributed by fax, mail, or direct printing on December 14, 2005 to the parties listed.

---

Robert A. Cox
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Mark W. Raines
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

Lauri Hays Prather
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

David Wade
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Warren D. McWhirter
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

Dale H. Tuttle
GLASSMAN JETER EDWARD & WADE
26 N. Second Street
Memphis, TN 38103

Steven M. Markowitz
LAW OFFICE OF STEVEN M. MARKOWITZ
45 S. Idlewild
Ste. 509
Memphis, TN 38104

Honorable J. Breen
US DISTRICT COURT